UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY CHAVARIN, <br> JAVIER CHAVARIN, <br> ADRIANNA CHAVARIN, <br> GABRIELLA CHAVARIN, <br><br> Plaintiffs, <br><br> v. <br><br> WESTCHESTER PUBLIC LIBRARY <br> BOARD OF TRUSTEES, <br> TIMOTHY HINSDALE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 15 C 2040 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court are the motions to dismiss of Defendants Westchester Public Library Board of Trustees (the "Board")[1] and Timothy Hinsdale (collectively, "Defendants"). Both Defendants seek to dismiss the Complaint of Plaintiffs Tracey, Javier, Adrianna, and Gabriella Chavarin (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Plaintiffs' claims fail to allege a cognizable cause of action and/or are barred by the applicable statutes of limitations. For the following reasons, both motions (Dkts. 15, 22) are granted.

---

[1] The Board notes that the name by which it was sued in this case, "Village of Westchester Public Library Board of Trustees," is incorrect. *See* Mot., Dkt. 15, at 1. The Court, therefore, has amended the case caption to reflect its correct name, "Westchester Public Library Board of Trustees." *See Gillard v. Bd. of Trs. of Comm. Coll. Dist. No. 508*, 393 Fed. Appx. 399, n.* (7th Cir. 2010) (unpublished).

# BACKGROUND

The following allegations in Plaintiffs' Complaint are accepted as true for purposes of the instant motions. Plaintiffs Tracey and Javier Chavarin are married and have two children, Adrianna and Gabriella. Compl., Dkt. 1, ¶ 3. From August 2008 through June 2013, Plaintiffs resided together in certain property owned by the Westchester Public Library and managed by the Board. *Id.* at ¶ 8. Hinsdale became a Member of the Board in September 2009, and was then named "Property Liaison" by the Board in October 2010, placing him in charge of repairs to Plaintiffs' home. *Id.* at ¶¶ 4, 10. According to Plaintiffs, while acting as Property Liaison, Hinsdale "was made aware of certain repairs that needed to be completed at the Plaintiffs' residence," but "intentionally obstructed repairs from being completed in accordance with the terms of the Plaintiffs' lease." *Id.* at ¶ 12. Specifically, Plaintiffs allege that, despite their complaints of mold in their home, Hinsdale falsely reported to the Board in October 2010 that "there were no longer any mold issues in the Plaintiffs' home," only to have a test later confirm otherwise. *Id.* at ¶ 14. Yet Hinsdale allegedly failed to inform Plaintiffs of the test results, and failed to rectify the mold problem "for over seven months" from the time Plaintiffs' first reported it. *Id.*

Plaintiffs also allege that, throughout "most of his time as a member" of the Board, Hinsdale "continuously targeted the Plaintiffs, verbally abusing and harassing, stalking them, and publicly humiliating them by spreading false statements about the Plaintiffs." *Id.* at ¶ 11. According to Plaintiffs' Complaint, Hinsdale: (1) "placed

flyers containing false claims regarding the Plaintiffs on parked cars" during a neighborhood church event in November 2011, *id*. at ¶ 15; (2) "posted insulting and demeaning epithets about the Plaintiffs to a social media account" in November or December of 2011, *id*. at ¶ 16; (3) "openly ranted about the Plaintiffs in retaliation for the Plaintiffs exercising their rights under the lease" during a June 2012 Board Meeting, *id*. at ¶ 17; (4) "followed Plaintiff Tracey Chavarin while she was driving to work, taking photos of her" in April 2013, *id.* at ¶ 18; and (5) "pulled in to the Plaintiffs' driveway and exited his vehicle," and "began yelling and shouting irrationally while standing in the Plaintiffs' driveway" in June 2013. *Id*. at ¶ 19.

Although Plaintiffs moved out of the residence owned by the Westchester Public Library on June 30, 2013, Hinsdale allegedly "continued to target the Plaintiffs." *Id*. at ¶ 20. Specifically, Plaintiffs allege that in July 2013, Adrianna Chavarin (22 at the time) "was in a vehicle with her friends, when she noticed that Defendant Hinsdale was driving alongside of their care with his cellular phone out, appearing to take photos." *Id.* at ¶ 21. And in October 2013, while Gabriella and Adrianna Chavarin (16 and 22 at the time) were at their new residence, Adrianna "noticed a flash" while she was standing on her front porch "and saw that Defendant Hinsdale was sitting in a parked vehicle across the street." *Id*. at ¶ 22. "Hinsdale was arrested later that day by the Westchester Police Department and charged with three counts of felony stalking and one count of disorderly conduct," *id*. at ¶ 23; "found guilty" on all counts, *id*. at ¶ 25; and subjected to a "No Contact" order "that

prohibited Defendant Hinsdale from making contact with any of the Plaintiffs." *Id*. Hinsdale resigned from the Board on the day of this arrest, *id*. at ¶ 26; "was again arrested after he followed Plaintiff Adrianna Chavarin while she was driving and then drove by the Plaintiffs' residence," *id*. at ¶ 27; and was "charged with unlawful violation of a stalking/no contact order." *Id*.

Plaintiffs further allege that they "made the Defendant Board of Trustees aware of Defendant Hinsdale's actions on multiple occasions," but the Board "ignored Defendant Hinsdale's outrageous and threatening behavior and, despite having the power to do so, refused to hold him accountable or attempt to curtail his misconduct." *Id*. at ¶ 13. Although Plaintiffs do not allege the particular misconduct of which they informed the Board, they do say that the Board "was notified of Defendant Hinsdale's arrest, but did nothing." *Id*. at ¶ 24.

## PROCEDURAL HISTORY

Plaintiffs filed the instant lawsuit against the Board and Hinsdale on March 7, 2015. Their Complaint includes four counts: (1) an equal protection "class of one" claim against Hinsdale, under 42 U.S.C. § 1983; (2) an "intentional infliction of emotional distress" claim against Hinsdale and the Board, under Illinois law; (3) a negligent/willful and wanton "supervision" claim against the Board, under Illinois law; and (4) a claim for indemnification by the Board for their federal claim against Hinsdale, also under Illinois law. *See* Dkt. 1 at ¶¶ 28-46. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Although "we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

The same principles apply to a Rule 12(b)(6) motion based on a statute of limitations affirmative defense. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (citing *Iqbal* and *Twombly*). Although "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," when a complaint "nonetheless set out all of the elements of an affirmative defense, dismissal under rule 12(b)(6) is appropriate." *Id*. at 935. When deciding a motion to dismiss state law claims based on a statute of limitations, a district court applies "state law regarding the statute of limitations," along with any "integral" rules or doctrines, such as tolling. *Id*.

**DISCUSSION**

The Court begins with Plaintiffs' "class of one" equal protection claim in Count I, because it is alleged to vest the Court with subject matter jurisdiction. *See* Compl., Dkt. 1, ¶ 2. Both Defendants move to dismiss Count I—Hinsdale because it purports to state an equal protection claim against him, and the Board because Plaintiffs' claim in Count IV against the Board seeks indemnification of Hinsdale for Count I. Defendants argue that Count I is time-barred to the extent it alleges any conduct "arguably under the color of law" as required for liability under § 1983, *see* Bd. Mem., Dkt. 16, at 6-7; Hinsdale Mot., Dkt. 22, at 2-4; and that it further fails to allege the necessary elements of a "class of one" equal protection violation, in any event. *See* Dkt. 16 at 6-7; Dkt. 22 at 4-5. With the exception of Gabriella Chavarin—as to whom the statute of limitations was tolled until she turned 18 on March 11, 2015, *see* Compl., Dkt. 1, at ¶ 3; 735 ILCS 5/13/211—the Court agrees that Plaintiffs' claim in Count I is time-barred. The Court also agrees that all Plaintiffs (including Gabriella) have failed to allege the necessary elements of an equal protection claim.

No party disputes that § 1983 requires a federal court to apply the personal injury statute of limitations from the state in which it sits—here, the two-year statute of limitations provided in 735 ILCS 5/13-202. *See* Bd. Mem., Dkt. 16, at 6; Resp. to Bd. Mot., Dkt. 21, at 2; Hinsdale Mot, Dkt. 22, at 2; Resp. to Hinsdale Mot., Dkt. 25, at 2. Defendants contend that any claims based on Hinsdale's actions before March 7, 2013 are thus time-barred, because they occurred over two years before Plaintiffs filed

their Complaint on March 7, 2015. *See* Bd. Mem., Dkt. 16, at 6; Hinsdale Mot., Dkt. 22, at 2. Plaintiffs concede that relief for such acts would be "time-barred," but argue that the "continuing violation doctrine" nevertheless "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." Resp. to Bd. Mem., Dkt. 21, at 3. As Plaintiffs' authority demonstrates, however, a "continuing violation" is one "that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wisc. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)); *see also Coney v. CSX Intermodal Terminals, Inc.*, No. 14 C 3098, 2014 WL 4269212, at *2 (Aug. 28, 2014) (quoting *Dasgupta*). The doctrine "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Kidney Cancer Ass'n v. North Shore Comm. Bank and Tr. Co.*, 373 Ill. App. 3d 396, 404, 869 N.E.2d 186, 193 (1st Dist. 2007) (quoting *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005)).

Accordingly, the continuing violation doctrine may not be used here to fuse Hinsdale's alleged acts before the limitations period—whereby "Hinsdale intentionally obstructed repairs from being completed in accordance with the terms of the Plaintiffs' lease," Compl., Dkt. 1, ¶ 12—with discrete acts of stalking and harassment months (if not years) later. But as importantly, such later actions by Hinsdale within the limitations period could not revive Plaintiffs' time-barred claims

7

in any event, because they fail for numerous reasons to substantiate a viable cause of action under § 1983.[2]

For one thing, Plaintiffs' conclusory allegation that Hinsdale's unspecified "actions" were "taken under color of law" (an allegation notably omitted from their equal protection claim, but made later in Count IV, *see* Dkt. 1 at ¶ 45), plainly lacks the necessary "factual context to plausibly show" that Hinsdale was acting in his capacity as a Board Member when he stalked or harassed Plaintiffs. *See Williams v. Farmer*, No. 12 C 01663, 2013 WL 1156426, at *4-5 (Mar. 20, 2013) (allegations of stalking and harassment did not "plausibly show" defendant "was acting under the color of law"); *Wyatt v. Hargadine*, No. 13-3150, 2013 WL 5678508, at *3 (C.D. Ill. Oct. 18, 2013) ("Plaintiff has failed to demonstrate whether Defendants were acting under the color of state law when the alleged harassment occurred."). Even more problematic, regardless of whether Plaintiffs have (or can) allege that such actions were "under color of law," decisions within this Circuit and elsewhere consistently hold that allegations of stalking, harassment, offensive language, and even threats by a

---

[2] Although it is unnecessary to do so (because Plaintiffs' Complaint alleges no actions by Hinsdale as Property Liaison within the limitations period, *i.e.*, after March 6, 2013), the Court notes (but does not rely upon) the Board's publicly available minutes indicating that Hinsdale resigned as the Board's Property Liaison as early as 2011, *see* Bd. Mem., Dkt. 22, at 3 n.1, a fact that Plaintiffs do not dispute. *See* Resp. to Hinsdale's Mot., Dkt. 25, at 9. *See also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (court may take judicial notice of dates "readily ascertainable" from public records when deciding Rule 12(b)(6) motion; *Weiler v. Village of Oak Lawn*, -- F. Supp. 3d --, 2015 WL 1538498, at n.2 (Mar. 31, 2015) (taking judicial notice of village board meeting minutes on motion to dismiss).

public official are legally insufficient to support an equal protection or other constitutional claim, as is necessary for relief under § 1983.[3]

Plaintiffs' allegations of Hinsdale's stalking and harassment within the limitations period are thus legally insufficient to revive their claims for Hinsdale's failure or refusal as Property Liaison to attend to Plaintiffs' home repairs in prior years. But staleness is not the only problem with Plaintiffs' claims based on Hinsdale's earlier conduct. Plaintiffs have also failed to allege any "similarly situated" lessees who were treated more favorably than Plaintiffs regarding such home repairs, or "facts sufficient to overcome the presumption of rationality that applies to

---

[3] *See*, *e.g.*, *DeWalt v. Carter*, 224 F.3d 607, 612 and n.3 (7th Cir. 2000) ("Precedent from this circuit as well as others" demonstrates that "simple verbal harassment" does not constitute an equal protection violation, or otherwise "violate the Constitution") (citing cases); *Chavez v. Ill. State Police*, 251 F.3d 612, 646 (7th Cir. 2001) (derogatory language does not constitute an equal protection violation) (citing *DeWalt* and *Bell v. City of Milwaukee*, 746 F.2d 1205, 1259 (7th Cir. 1984) (same)); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1221 (7th Cir. 1994) (same, citing *Bell*); *Wyatt*, 2013 WL 5678508, at *3 ("verbal harassment is not actionable under § 1983" (citing *DeWalt*)); *Williams*, 2013 WL 1156426, at *4-5 (allegations that officer ex-husband was "following and stalking" plaintiff "fall short of stating a constitutional claim" necessary for liability under § 1983); *Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 n.2 (N.D. Ill. June 25, 2007) ("Verbal abuse" alone is insufficient to support an equal protection claim; a plaintiff must allege "something more than an expression of hostility to state a claim under the Constitution.") (quoting *Ritzel v. Milwaukee Cnty.*, 103 Appx. 7, 2004 WL 1435216, at *2 (7th Cir. June 23, 2004)); *Keeling v. C.O. Barrager*, No. 4:CV-11-0365, 2014 WL 1338077, at *17 (M.D. Pa. Apr. 3, 2014) ("Verbal harassment or threats, without some reinforcing act accompanying them, do not state a constitutional claim.") (citing cases, including *DeWalt*); *Matthews v. Beard*, No. 11-221J, 2013 WL 1291288, at *7 (W.D. Pa. Mar. 27, 2013) ("offensive speech . . . . is no equal protection violation") (citing *Bell*); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment of the sort alleged by Mr. Murray is insufficient to state a constitutional deprivation.").

government classifications." *See Kurtis B. v. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013) (quoting cases). Indeed, Plaintiffs acknowledge their failure to allege the existence of such comparators, but argue that this omission is "not fatal" where "animus is readily obvious." *See* Resp. to Hinsdale Mot., Dkt. 25, at 11 (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)). In a similar vein, Plaintiffs highlight their allegations that Hinsdale's actions "were done for arbitrary, irrational and discriminatory reasons, and based on personal animus," and that he "lacked a rational basis for singling out the Plaintiffs as he did." *Id.* at 10. According to Plaintiffs, these allegations of "animus" obviate the requirement to allege either "similarly situated" tenants or the Board's lack of a rational basis to treat Plaintiffs differently from such other tenants. *Id*. at 11. Both arguments are incorrect.

To survive a Rule 12(b)(6) motion, a "class of one" plaintiff "must plead" that she "was 'intentionally ***treated differently from others similarly situated*** and that there is ***no rational basis for the difference in treatment***.'" *Kopp*, 725 F.3d at 685-86 (emphasis added) (quoting *Engquist v. Or. Dep't of Agric*., 553 U.S. 591, 601 (2008)). These requirements are not satisfied by allegations that the plaintiff was "singled out" or "harassed" without reference to others "similarly situated," or even that the harasser bore the plaintiff "personal animus," as Plaintiffs allege here. *See Kopp*, 725 F.3d at 686 ("it is clear than an allegation of improper motive does not necessarily overcome the presumption of rationality"). That is because a "class of one" claim is one of "discrimination," not "improper motive" or even "tortious conduct."

10

*McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004)) ("a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case"); *Kopp*, 725 F.3d at 686 ("improper motive" insufficient to "permit the case to move forward").

Thus, while the Seventh Circuit has allowed "class of one" claims "despite the lack of a comparator," it has repeatedly stressed (while distinguishing the very authorities Plaintiffs cite here) that these were cases in which "plaintiffs were able to exclude rational explanations for why local officials targeted them." *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) (distinguishing *Geinosky v. City of Chi.*, 675 F.3d 743, 747-48 (7th Cir. 2012)), and *Swanson*, 719 F.3d at 785); *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845-46 n.3 (7th Cir. 2014) (same). Plaintiffs here have alleged neither "similarly situated" comparators nor facts sufficient to "exclude rational explanations" for Hinsdale's alleged failure as the Board's Property Liaison to rectify the mold problem in Plaintiff's home—relating to access, test results, scheduling issues, or other benign administrative reasons—that are readily discernable from Plaintiffs' allegations. *See*, *e.g.*, Compl., Dkt. 1, ¶¶ 10, 14 (alleging Plaintiffs' mold complaints for "several months" before October 2010, Hinsdale's appointment as Property Liaison also in October 2010, and test results, Board meetings, and correction of the problem in the four months thereafter); *see also Miller*, 784 F.3d at 1120-21 (distinguishing "class of one" claims allowed "despite the

lack of a comparator" in *Geinosky* and *Swanson* "because the complaint reveal[ed] a rational basis"; and citing *Kopp*, 725 F.3d at 686 and *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008), for "affirming dismissal of class-of-one claim when complaint revealed rational basis for treating plaintiff differently notwithstanding facts suggesting officials had potentially improper motives").

The Court thus agrees that this "is a garden-variety tort dispute between Plaintiffs and Defendant Hinsdale and it should not be characterized as a constitutional claim." Hinsdale Reply, Dkt. 26, at 6. Plaintiffs' Complaint demonstrates, moreover, that the other deficiencies in their purported equal protection claim also cannot be cured—*i.e.*, that Hinsdale's actions as Property Liaison are time-barred, and that his later stalking and harassment, while perhaps tortious, was not unconstitutional. Nor have Plaintiffs requested leave to amend, or otherwise indicated how they might cure these deficiencies. The Court, therefore, grants Defendants' request to dismiss Count I with prejudice, but will not address the Board's arguments concerning Plaintiffs' state law claims in Counts II-IV. Although they, too, may be untimely (particularly those claims against the Board that are subject to a one-year statute of limitations under 745 ILCS 10/8-101(a)), as the Board acknowledges, "there is a presumption to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed." Bd. Reply, Dkt. 27, at 11.[4]

---

[4] In dismissing Count I with prejudice, the Court is mindful of Seventh Circuit holdings directing "that leave to amend be granted at least once when there is a potentially curable problem with the complaint." *See*, *e.g.*, *Bausch v. Stryker Corp.*,

## CONCLUSION

For the foregoing reasons, the Court grants both Defendants' motions to dismiss pursuant to Rule 12(b)(6). *See* Dkts. 15, 22. Count I of Plaintiffs' Complaint is dismissed with prejudice, and Counts II-IV are dismissed without prejudice. Judgment will be entered in favor of Defendants.

Dated: August 28, 2015

Charles P. Kocoras
United States District Judge

---

630 F.3d 546, 562 (7th Cir. 2010); *Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519-21 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted"). But Plaintiffs here have not sought leave to amend, and as noted above, the foregoing deficiencies in Count I are not curable. Dismissal with prejudice is thus not only appropriate, *see Gonzalez-Koeneke v. West*, 791 F.3d 801, 804-06 and n.16 (7th Cir. 2015) (no abuse of discretion in dismissal with prejudice and declining "*sua sponte* leave to amend," where "plaintiff "did not suggest that the supposed deficiencies identified in the defendants' motion could be cured by amendment, nor did she request leave to amend if the defendants' motion were granted"), but also the most expedient means of leaving the parties to resolve any remaining disputes between them in state court.